UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Charles E. Fouse, ) | Civil Action No.: 4:22-cv-0053-TER |
| ) | |
| Plaintiff, ) | |
| ) | |
| -vs- ) | |
| ) | ORDER |
| Kilolo Kijakazi, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying Plaintiff's claim for disability insurance benefits(DIB). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. This action is proceeding before the undersigned pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. Proc. R. 73.

## I. RELEVANT BACKGROUND

### A. Procedural History

Plaintiff filed an application for DIB on December 19, 2019, with an amended alleged onset date of September 12, 2017. (Tr. 14). His claims were denied initially and upon reconsideration. Thereafter, Plaintiff filed a request for a hearing. A hearing was held in April 2021, at which time Plaintiff and a vocational expert (VE) testified. The Administrative Law Judge (ALJ) issued an unfavorable decision on June 30, 2021, finding that Plaintiff was not disabled within the meaning of the Act. (Tr. 14-22). Plaintiff filed a request for review of the ALJ's decision, which the Appeals Council denied on November 18, 2021, making the ALJ's decision the Commissioner's final decision. (Tr.1-3). Plaintiff

filed an action in this court in January 2022. (ECF No. 1).

**B.     Plaintiff's Background**

Plaintiff was born on November 27, 1957, and was sixty-two years old at the initial determination. (Tr. 79). Plaintiff had at least a high school education and past relevant work experience as a security guard. (Tr. 21). Plaintiff alleges disability originally due to primary osteoarthritis of knees and joints, idiopathic autoimmune hemolytic anemia, chronic ITP idiopathic thrombocytopenia, lymphoproliferative disorder, splenomegaly, diabetes type 2, fatty liver, chronic pain, hypertension, and unconjugated hyperbilirubinemia. (Tr. 79-80). Pertinent medical records will be discussed under the relevant issue headings.

**C.     The ALJ's Decision**

In the decision of June 30, 2021, the ALJ made the following findings of fact and conclusions of law (Tr. 14-22):

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2020.

2. The claimant did not engage in substantial gainful activity during the period from his amended alleged onset date of September 12, 2017 through his date last insured of December 31, 2020 (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, the claimant had the following severe impairments: obesity, osteoarthritis of the bilateral knees, diabetes, and left shoulder impingement (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except occasional climbing ramps and stairs; never climbing ladders, ropes, or scaffolds;

      occasional kneeling, crouching, and crawling; should avoid concentrated exposure to workplace hazards; never work at unprotected heights; occasional overhead reaching with the left upper extremity; time off task not to exceed 10% of the workday and absences of no more than 1 day every 2 months due to his impairments.

6. Through the date last insured, the claimant was capable of performing past relevant work as a security guard. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant was not under a disability, as defined in the Social Security Act, at any time from September 12, 2017, the amended alleged onset date, through December 31, 2020, the date last insured (20 CFR 404.1520(f)).

## II. DISCUSSION

Plaintiff argues the ALJ failed to explain how the left shoulder impingement had no effect on Plaintiff's RFC ability to lift/carry at a light exertional level despite the ALJ having found that evidence submitted after the state agency consultant opinions warranted finding additional limitations regarding lifting.

Plaintiff argues the ALJ failed to conduct a function-by-function RFC analysis. Plaintiff argues the ALJ failed to properly evaluate the combined effect of obesity and osteoarthritis of knees on Plaintiff's RFC abilities of sustaining prolonged standing/walking of light work. Plaintiff argues the ALJ erred in the subjective symptom evaluation as to Plaintiff's knee pain. Plaintiff argues the ALJ erred in finding Dr. Denton's opinions partially persuasive.

The Commissioner argues that the ALJ's decision is supported by substantial evidence.

### A. LEGAL FRAMEWORK

#### 1. The Commissioner's Determination–of–Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. §

423(a).  Section 423(d)(1)(A) defines disability as: the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.  42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting the "need for efficiency" in considering disability claims).  An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity ("SGA"); (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[1] (4) whether such impairment prevents claimant from performing PRW;[2] and (5) whether the impairment prevents him from doing SGA.  *See* 20 C.F.R. § 404.1520.  These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary.  20 C.F.R.

---

[1] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do.  The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525.  If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment.  20 C.F.R. § 404.1520(a)(4)(iii).  To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria."  20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[2] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

§ 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. See 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

### 2.     The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [ ] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases *de novo* or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir.1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence as a threshold is "not high;" "[u]nder the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

**B.     ANALYSIS**

**<u>RFC as to Left Upper Extremity</u>**

Plaintiff argues the ALJ failed to explain how the left shoulder impingement had no effect on Plaintiff's RFC ability to lift/carry at a light exertional level despite the ALJ having found that evidence submitted after the state agency consultant opinions warranted finding additional limitations regarding lifting.

An adjudicator is solely responsible for assessing a claimant's RFC. 20 C.F.R. § 416.946(c). In making that assessment, he must consider the functional limitations resulting from the claimant's

medically determinable impairments. Social Security Ruling ("SSR") 96–8p, 1996 WL 374184, at *2. This ruling provides that: "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96–8, *7. "The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.* Additionally, " 'a necessary predicate to engaging in a substantial evidence review is a record of the basis for the ALJ's ruling,' including 'a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence.' " *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (*quoting Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)). The ALJ considers the evidence in the record as a whole when analyzing Plaintiff's claims, as does this court when reviewing the ALJ's decision. *See Craig*, 76 F.3d at 595.

Through the DLI of December 2020, the ALJ found Plaintiff's left shoulder impingement was a severe impairment. (Tr. 16). The ALJ analyzed Listing 1.18 for knees and left shoulder. (Tr. 17). In the RFC, the ALJ found Plaintiff could perform light exertion as defined in 20 C.F.R. § 404.1567(b) but with occasional overhead <u>reaching</u> with the left upper extremity. (Tr. 18). The ALJ noted Plaintiff's testimony that he had left arm numbness and limited range of motion related to his left shoulder impingement, which sometimes prevented him "from <u>lifting</u> his arm overhead." (Tr. 19, 53-54). Later, the ALJ summarized left shoulder treatment records:

> The claimant sought orthopedic treatment of left shoulder pain in October 2020. Left shoulder X-rays showed degenerative changes. An MRI showed degenerative disease of the AC joint with an inferior osteophyte and rotator cuff tendinitis. The claimant was assessed with left shoulder impingement (Exhibit 15F). The claimant participated in several sessions of physical therapy for his left shoulder impingement in October 2020, but discontinued to a home exercise program due to insurance/financial reasons (Exhibit

14F). On follow up in November 2020, the claimant told his orthopedist that his left shoulder symptoms were a little better (Exhibit 15F).

(Tr. 20). In concluding the RFC narrative, the ALJ stated: "based on evidence received at the hearing level, the undersigned finds that the claimant has additional limitations regarding <u>lifting</u> with the left upper extremity." (Tr. 21).

Plaintiff was found to be able to perform past work as a security guard, as actually performed and as generally performed, DOT# 372.667-034.[3] (Tr. 22). The ALJ found the DOT did not have a differentiation between overhead and all other reaching and the ALJ stated the work could be performed with the limitations. (Tr. 22).

Light exertional work, as related to Plaintiff's shoulder issues, is defined as lifting no more than 20 pounds at a time with frequent lifting or carrying up to 10 pounds. Light exertional work can have some pushing/pulling of arm controls. 20 C.F.R. § 404.1567(b).

The ALJ stated in the RFC narrative that he found additional limitations regarding <u>lifting</u>. (Tr. 21). However, the actual RFC limitations are not additional limitations regarding <u>lifting</u>. (Tr. 18). The ALJ's RFC narrative conflicts with the actual RFC found. The RFC only provided for additional limitations regarding <u>reaching</u>. These abilities are not interchangeable. Exertional capacity addresses an individual's limitations and restrictions of physical strength and defines the individual's remaining abilities to perform each of seven strength demands, which includes lifting, carrying, pushing, and pulling. SSR 96-8p, *5. Reaching is not an exertional function. SSR 96-8p, *6. Reaching is a manipulative, nonexertional ability. SSR 96-8p, *6. It does not appear that the ALJ differentiated the nuances in the SSR and regulations between abilities in lifting and abilities in reaching.

---

[3] The DOT#372.667-034 requires reaching frequently.

8

Further, for DOT purposes, lifting is defined as: "Raising or lowering an object from one level to another (includes upward pulling)." Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles, Appendix C, at C-1 (Dep't of Labor 1993). Reaching is defined as: "Extending hand(s) and arm(s) in any direction." *Id.* at C-3. The two tasks are clearly distinguished under the DOT. *See also Blake v. Astrue*, No. 2:10-984-BHH, 2011 WL 4345829, at *4 n.2 (D.S.C. Sep. 16, 2011) (finding that reaching and lifting are different tasks); *Cadusale v. Astrue*, 2012 WL 2373425, at *4 (C.D. Cal. June 21, 2012)("lifting and reaching are not the same");*Blair v. Astrue*, 2012 WL 2974897, at *4 (M.D. Ala. July 20, 2012)("reaching and lifting are distinct limitations, as lifting is an exertional limitation, while reaching is considered nonexertional").

Because there is no additional limitation as to lifting in the RFC finding, where the ALJ stated he found an additional limitation in lifting, the court simply "cannot tell whether [the ALJ's] decision is based on substantial evidence." *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986). It is not the court's province to reconcile a conflict created by the ALJ in his opinion. The ALJ has not provided the court with a meaningful opportunity to review the RFC and the RFC explanation/narrative. Remand is appropriate where inadequacies in the ALJ's analysis frustrate meaningful review. *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015).

Proper explanation of this issue may have a significant impact on the Commissioner's determination at other Steps. Therefore, the Court will not address Plaintiff's remaining issues. Upon remand, the ALJ should take into consideration Plaintiff's allegations of error, including but not limited to Plaintiff's arguments regarding the RFC, the combined effect of obesity and osteoarthritis, subjective symptom evaluation, and opinions, and support findings with citation to substantial evidence and provide logical explanation from the evidence to the ultimate conclusions. *See Mascio v. Colvin*, 780

9

F.3d 632, 636 (4th Cir. 2015).

## CONCLUSION

In conclusion, it may well be that substantial evidence exists to support the Commissioner's decision in the instant case. The court cannot, however, conduct a proper review based on the record presented. Accordingly, pursuant to the power of the Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in social security actions under sentence four of Sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. Sections 405(g) and 1338(c)(3), the Commissioner's decision is REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings in accordance with this opinion.

October 27, 2022  
Florence, South Carolina

s/Thomas E. Rogers, III  
Thomas E. Rogers, III  
United States Magistrate Judge